UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:22-cv-61655-JEM/Becerra

DEEPAK TULSIYAN and
SHANU PANT,

    Plaintiffs,

v.

UR JADDOU, Director, U.S. Citizenship
and Immigration Services,

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION[1]

**THIS CAUSE** came before the Court upon Plaintiffs' Motion for Preliminary Injunction (the "Motion" or the "Motion for Preliminary Injunction"). ECF No. [5]. Defendant Ur Jaddou, Director of U.S. Citizenship and Immigration Services ("Defendant" or "USCIS" or the "Government") filed a Response, ECF No. [10], and Plaintiffs filed their Reply, ECF No. [12]. On September 15, 2022, the Court heard oral argument on this matter (the "Hearing"). ECF No. [13]. Upon due consideration of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that Plaintiffs' Motion for Preliminary Injunction, ECF No. [5], be **DENIED**.

I.    **BACKGROUND**

Plaintiffs are citizens of India who have lived in the United States for eighteen years and are lawfully present in the United States by virtue of H-1B visas. *See* ECF No. [5] at 8–9. On

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [6].

1

October 29, 2020, Plaintiffs filed adjustment of status applications based on either or both an approved EB-2 and approved EB-3 with a relevant priority date of September 5, 2012.[2] *Id.* "Priority date" refers to the date that an applicant files their initial immigrant visa application—not the date that they file their application for adjustment of status. *Id.* at 10. As of the filing of Plaintiffs' Complaint, Plaintiffs' Applications to Register Permanent Residence or Adjust Status (the "I-485 Forms") remain pending, as USCIS has not yet adjudicated the I-485 Forms. *Id.* at 9; *see also* ECF No. [1] ¶ 23. At issue here is Plaintiffs' argument that this delay in adjudication of their I-485 Forms is the result of a USCIS policy referred to as the "Regression Policy."

Specifically, Plaintiffs argue that under the Regression Policy, USCIS requires an immigrant visa to be available both at the time that an adjustment of status application is filed and at the time that the application is adjudicated. ECF No. [5] at 6. Plaintiffs argue that the requirement that an immigrant visa be available at the time of adjudication is invalid because Congress revised the statute in 1976 to remove that requirement. *Id.* at 5–6. Further, "Congress [] numerically limits [] preference immigrant visas by fiscal year ('FY')[,]" and "visa numbers available fluctuate FY to FY." *Id.* at 3.[3] The order in which USCIS adjudicates I-485 Forms depends on the applicant's priority date—that is, each year, just as the number of available visas fluctuates, so too does the "cut-off" priority date. "For example, in 2012, immigrant visas available for EB2 immigrants regressed[,]" that is, the priority date for which USCIS would review I-485 Forms changed from "those who applied on or by May 1, 2010 to those who applied on or by

---

[2] The Government notes that "Plaintiffs filed two sets of adjustment of status applications." ECF No. [10] at 6 (internal citations omitted). Specifically, "[t]he first set was filed with USCIS on October 29, 2020, and was filed in the EB-3 category based on a concurrently-filed Form I-140 [and t]he second set of I-485s was filed November 2, 2021 in the EB-2 category based on an I-140 petition filed on October 28, 2016 . . . ." *Id.* (internal citations omitted).

[3] "The State Department's Bureau of Consular Affairs publishes a monthly visa bulletin which sets forth visa availability for each immigrant visa preference categories." ECF No. [10] at 4.

August 15, 2007." *Id.* at 7. Applications "regress" when more applications are filed than there are visas available in a given fiscal year. In short, if a petitioner has filed an adjustment of status application and there are no more visas left in a fiscal year, then USCIS may set an earlier priority date for adjudicating petitions in the next fiscal year, resulting in applicants waiting years for their applications to be considered. *See id.* at 6–7. When the new fiscal year begins on October 1st, a new supply of visa numbers is available for allocation, and "[u]nder USCIS's Retrogression Policy, the adjustment of status application remains pending while the visa number is 'regressed,' but USCIS will only decide the application when the visa number is 'current' again[,]" meaning there are visas available at the time of consideration. *Id.* at 7.

## II.   THE INSTANT ACTION

Plaintiffs filed their Complaint on September 2, 2022. ECF No. [1]. Therein, Plaintiffs allege that Defendant violated the Administrative Procedures Act (the "APA") because Defendant has "unreasonably delay[ed]" adjudication of Plaintiffs' I-485 Forms. *Id.* ¶¶ 94–158. Plaintiffs also filed their Motion for Preliminary Injunction on September 6, 2022, requesting that the Court enter an order: (1) requiring Defendant to adjudicate Plaintiffs' I-485 Forms by September 30, 2022; (2) requiring the Department of State to reserve unallocated visas numbers from Fiscal Year 2022 for Plaintiffs, should they ultimately prevail in the litigation; (3) compelling Defendant "to 'record the alien's lawful admission for permanent residence' under 8 U.S.C. § 1255(b)"; or (4) enjoining Defendant from applying the Regression Policy. *See* ECF No. [5] at 20–22.

Thereafter, Defendant filed a Response noting that there were no more visas available this fiscal year, and as such, "[t]here is no meaningful relief for the Court to grant Plaintiffs[.]" ECF No. [10] at 1; *see also id.* at 6–8. As such, Defendant argues that Plaintiffs seek more than just preservation of the status quo, and "preliminary injunctions that seek affirmative relief beyond merely maintaining the status quo pending the resolution of the matter are 'particularly

3

disfavored.'" *Id.* at 9–11. Defendant also notes that Plaintiffs cannot demonstrate that they are likely to experience irreparable harm because any harm would not be permanent and "Plaintiffs will not be placed in removal proceedings, be compelled to leave the United States, or stripped of their employment authorization." *Id.* at 10. Indeed, according to Defendant, the relief that Plaintiffs seek would afford Plaintiffs preferential treatment by adjudicating their I-485 Forms before "thousands of other similarly situated applicants[,]" which is contrary to public interest. *Id.* at 21–22. Defendant also argues that Plaintiffs cannot show that they are likely to succeed on the merits because this Court lacks jurisdiction to review USCIS's discretionary decisions and USCIS has not unreasonably delayed adjudication of Plaintiffs' I-485 Forms. *Id.* at 12–23.

Because Defendant has confirmed that there are no visas remaining in this fiscal year, Plaintiffs, in their Reply, "agree that their first two request[s] are moot[,] . . . [that their] third request for relief would require an evidentiary hearing to test the facts Defendant relies on in its response," and that "given the expedited timeline for this motion, understandably that is not practical[.]" ECF No. [12] at 1. As such, Plaintiffs only seek relief in the form of an Order enjoining Defendant from applying the Regression Policy. *Id.* For the reasons that follow, the undersigned finds that Plaintiffs have not met their burden to show that they are entitled to a preliminary injunction awarding such relief.

## III.   ANALYSIS

To prevail on a request for a preliminary injunction, a movant must demonstrate the following four elements:

> (1) a substantial likelihood of success on the merits of the underlying case,
> (2) the movant will suffer irreparable harm in the absence of an injunction,
> (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and
> (4) an injunction would not disserve the public interest.

*Johnson & Johnson Vision Care. Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002) (citation omitted).  The third and fourth factors typically "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  "A preliminary injunction is an 'extraordinary and drastic remedy'" which should not be granted unless the movant can clearly establish each of the four elements.  *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).  The failure to establish an element will warrant denial of the request for preliminary injunctive relief and obviate the need to consider the remaining prerequisites.  *Dawson v. Ameritox, Ltd.*, 571 F. App'x 875, 880 (11th Cir. 2014).  Indeed, "a preliminary injunction is a powerful exercise of judicial authority in advance of trial.  The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990).  Thus, "a preliminary injunction 'is not the same as an adjudication on the merits,' but is merely a device created to preserve the rights of the parties until a determination can be made on the merits." *Tipsey McStumbles, LLC, v. Griffin*, No. 11-cv-00053, 2011 WL 13217129, at *1 n.1 (S.D. Ga. Aug. 2, 2011) (quoting *Augusta Video, Inc. v. Augusta-Richmond Cnty., Ga.*, 249 F. App'x 93, 98 n.4 (11th Cir. 2007)).

  Plaintiffs have failed to demonstrate that they will suffer irreparable harm absent an order enjoining USCIS from applying the Regression Policy.  As an initial matter, it should be noted that Plaintiffs are not asking the Court to maintain the status quo.  The order they seek would enjoin USCIS's current policy for reviewing these applications.  That type of extraordinary relief is not warranted here, given that Plaintiffs will not suffer irreparable harm if the Motion is denied and the case continues to be litigated in due course.  Granting an injunction would only address the delay between now and the time that the matter becomes ripe as part of the litigation.  Assuming

Plaintiffs prevail at that point, the harm created from denying the injunction is the time that Plaintiffs had to wait to obtain relief. That alone is not sufficient. Indeed, under that theory, every case would be subject to a preliminary injunction, as every prevailing party would want to prevail sooner rather than later.

Defendant relies on *Singh v. Jaddou*, No. 22-cv-01180, 2022 WL 4094373, at *5 (W.D. Wash. Sept. 2, 2022), a recent case from another district. In *Singh*, like here, Plaintiffs argued that they would "suffer irreparable emotional and psychological harm" as a result of USCIS's Regression Policy. *Id.* Specifically, Plaintiffs argued that they would experience "mental anguish and suffering due to [] inability to travel to visit family, the stunting of their professional development, the use of financial resources in order to maintain their immigration status, and the possibility that they could be forced to leave the country with no one to care for their child." *Id.* The court in *Singh* determined that Plaintiffs failed to establish that they were likely to suffer irreparable harm absent relief. The court acknowledged that "Plaintiffs [were] currently experiencing a great deal of uncertainty while they await adjudication of their applications," but "even if Plaintiffs' visa numbers regress, according to USCIS, Plaintiffs will remain eligible for adjustment of status for the pendency of their applications." *Id.*

Similarly, Plaintiffs argue that there are real hardships that Plaintiffs experience as a result of waiting more time for adjudication of their I-485 Forms, including the inability to travel back to India for funerals or religious reasons, and the possibility of losing their status altogether if they lost their jobs, since their visas are tied to their employment. However, that is simply not sufficient to warrant an injunction. Like the plaintiffs in *Singh*, Plaintiffs will likewise remain eligible to adjust their status while their petitions remain pending. Accordingly, "to the extent Plaintiffs argue that the harm results from not having their applications adjudicated immediately . . . they have also failed to show irreparability" because even if under the Regression Policy Plaintiffs' I-485 Forms

6

will not be adjudicated "now but rather at some later date, this means only that the decision is delayed, not that their applications are irreparably or permanently prejudiced." *Wali v. USCIS*, No. 21-cv-3288, 2021 WL 5041207, at *4 (D. Neb. Oct. 29, 2021). Ultimately, the harm that Plaintiffs allege is speculative. First, Plaintiffs allege that they will *become* subject to the Regression Policy as of October 1, 2022. Second, Plaintiffs "cannot allege that their adjustment applications will ultimately be successful" because "the discretion to grant or deny an application for adjustment of status lies squarely with the Attorney General." *Id.* (citing 8 U.S.C. § 1255(a)). As was clear from the arguments presented at the Hearing, the only reason to consider this matter as a preliminary injunction is to have the matter heard more quickly, as there is no other harm that Plaintiffs would suffer by the Court denying the request for injunctive relief. The Court does not make light of the fact that for Plaintiffs, the wait to have their matter heard is difficult and continues to leave their future in a state of uncertainty. The sooner they have their application adjudicated, for them, the better. That desire, however, is not a basis to grant extraordinary relief.

Because Plaintiffs are unable to establish irreparable harm, one of the requisite elements for a preliminary injunction, the Court need not consider the remaining elements. *See Dawson*, 571 F. App'x at 880. Accordingly, the Court need not consider the merits of Plaintiffs' claims to evaluate likelihood of success on the merits. Indeed, at this stage in the litigation, the only question before the undersigned is whether preliminary injunctive relief is required to maintain the status quo. As discussed above, such relief is not warranted. Plaintiffs may litigate their arguments in due course when the Regression Policy is applied as of October 1, 2022.

## IV.   CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiffs' Motion for Preliminary Injunction, ECF No. [5], be **DENIED**.

## V.     OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **TWO (2) DAYS** of being served with a copy of this Report and Recommendation.  The shortened objection period is necessary given that Plaintiffs allege that they will be subject to USCIS's Regression Policy when the Fiscal Year ends on September 30, 2022, such that their visa numbers will no longer be current.  In addition, the Parties did not object to the shortened period, which was proposed during the Hearing.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on September 21, 2022.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE